UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JERMAINE DEMONT JONES | CIVIL ACTION |
| VERSUS | NO. 05-0087 |
| RODNEY J. STRAIN, JR., SHERIFF OF ST. TAMMANY PARISH, ET AL. | SECTION "R" (1) |

## ORDER AND REASONS

Plaintiff, Jermaine DeMont Jones, a state prisoner, filed this *pro se* civil action pursuant to 42 U.S.C. § 1983. He named as defendants Sheriff Rodney J. Strain, Jr., Darren Blackmon, Wayne Wicker, James McIntosh, Mark Liberto, Nick Powe, Justin Gibson, Danny Fonte, Doug Sharp, James Taylor, Evan Graham, and the Lakeview Medical Center. In this lawsuit, plaintiff claims that excessive force was used in effecting his arrest and that he received inadequate medical care for his resulting injuries. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[1]

---

[1] Rec. Doc. 50.

Motion for Summary Judgment

Strain, Blackmon, Wicker, Fonte, Sharp, McIntosh, Taylor, Liberto and Powe have filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[2]  Plaintiff has opposed that motion.[3]

The principal purpose of Fed.R.Civ.P. 56 is to isolate and dispose of factually unsupported claims.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  In reviewing a motion for summary judgment, the Court may grant judgment when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  "Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted).  The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Summary judgment will be granted against "a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will

---

[2]  Rec. Doc. 72.

[3]  Rec. Docs. 78 and 79.

bear the burden of proof at trial." Celotex, 477 U.S. at 322. A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. Id. at 322-23.

The Court has no duty to search the record for evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Id. Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996). "[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Little v. Liquid Air Corp., 37 F.3d 1069, 1075-76 (5th Cir. 1994) (emphasis deleted) (internal quotation marks omitted).

In his complaint, plaintiff contends that excessive force was used to effect his arrest on February 19, 2004. In pertinent part, he states:

> I was arrested on a narcotics search warrant, at a rental house I was living in on 21195 Eden St. Covington LA. During the arrest I was aggravatedly assaulted by the St. Tammany Parish Sheriff's office narcotics division. My assault happend as followed. I was having a get together for a friend who's mother passed away. The funeral was over at about two o'clock afterward we proceded to my house. I would say around 8 o'clock the narcotics agents showed up. I was on my way out of the bathroom when I was meet by the narcotics agents. They where all dressed in black with black ski-masks covering their faces. They then nocked me over the toilet. Where they must have though I was trying to get rid of something. Because of the way I landed. They then started their assault. Where then I tryed to duck my head out of the way. But one of them grabed me from behind in a choke hold. Then pulled my head back, and let the other officers continue there assault. That's how

3

> I got the lumps on both sides of my head. From the number of lumps on my head, face, and back. I would say I was hit around 40 times. The officers had to be beating me with their flashlights guns and fist. They continued their assault even when my hands were behind my back in cuffs. They then moved me from the toilet area, to inside the bathtub. Where my head was pented face down in the tub. I looked up to my right and was hit a couple more times to the right side of my face, while still in hand cuffs. I can remember hearing one of the officers saying to the others "his hands are behind his back he is not resisting, he is not resisting," as if he was trying to tell the other officers to stop hitting me, they then stood me up and one of the officers started to choke me, at the same time telling me to "spit out the dope." But they already got it out of my pocket. ... Do to the fact that they where wearing ski-mask, I can't exactly point out which one's actually did the crimes in question. Do to this violent and vicious attack, I had to go to Lakeview Medical Center. Where I recived medical attention. ... Do to this violent and vicious attack, I sufferd a broken nose on the left side of my nose. I also sufferd a sprang right anckle. Also multiple contusions throughout my head. For about 3 day in the holding cell I couldn't eat because my jaws were swolen shut. The worst injury I sufferd was to my eyes. I went to Charity Hospital where they determined do to the repeated blows to my eye. That I have lost sight. I now may have to deal with living the rest of my life with the discomfort of wearing glasses or contacts.[4]

Unquestionably, arrestees have a constitutional right under the Fourth Amendment to be free from the use of excessive force. The "use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness." Saucier v. Katz, 533 U.S. 194, 202 (2001). The United States Fifth Circuit Court of Appeals has noted:

> To determine the objective reasonableness of [officers'] conduct, we must examine whether a reasonable officer could have believed their conduct to be lawful, in light of clearly established law and the information the officers possessed. We balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. We pay careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. We do not utilize 20/20 vision in hindsight, and we consider the fact that police officers are often forced to make split second judgments – in

---

[4]   Rec. Doc. 1.

4

circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

Gutierrez v. City of San Antonio, 139 F.3d 441, 447 (5th Cir. 1998) (internal quotation marks, brackets, and citations omitted).

In support of their motion for summary judgment, each of the movants, except Strain, has submitted an affidavit detailing what involvement, if any, he had in plaintiff's apprehension. Because plaintiff has candidly admitted in his complaint that he does not know which officers were actually involved in the beating, defendants' affidavits are uncontroverted with respect to the issue of their degree of involvement.

Sharp and McIntosh admit in their affidavits that they, along with Gibson,[5] were the only officers actually involved in plaintiff's physical apprehension. However, not surprisingly, they offer an account of the events quite contrary to that recounted by plaintiff. For example, Sharp states:

3. Upon arrival to the residence, the entry team agents consisting of Detective McIntosh, Sergeant Mistretta, Detective Gibson, Detective Taylor, Detective Graham, and myself, entered the residence through the front door while clearly announcing our presence and observed Jermaine Jones run into a nearby bathroom in an attempt to flee.

4. Detective Gibson and I forced the bathroom door open and found Jones attempting to flush down the toilet two large plastic bags containing what we believed to be crack cocaine.

5. When Detective Gibson and I entered the small bathroom and attempted to move Jones away from the toilet in order to retrieve the suspected drugs from the toilet, Jones grabbed tightly onto the toilet and held on to it.

---

[5] Gibson has never been served and did not join in the motion for summary judgment.

6.  Detective McIntosh then entered the small bathroom to assist Detective Gibson and me in prying Jones away from the toilet, as he continued to resist our efforts and our repeated loud verbal commands for him to stop resisting.

7.  I then alerted Detective Taylor to quickly remove the clear plastic bags before they were flushed down the toilet and Deputy Taylor then briefly entered the small bathroom and retrieved the two plastic bags from the swirling water and placed them on the back of the toilet.

8.  When we were finally able to overcome Jones' resistance and pry him away from the toilet we made an attempt to move him away from the toilet without using any force that caused him harm, when Jones began to violently swing his closed fist at us.

9.  In an effort to restrain Jones' combative behavior, we turned him away from the toilet in an attempt to handcuff him but Jones continued to violently swing his fists at us which caused him to lose his balance and fall face first across the bathroom sink and hit the sink with his nose. The force that caused Jones to lose his balance and fall was his own force due to him wildly swinging his arms, and was not caused by any push, shove, or touching of him by any of the detectives.

10. When we were finally able to gain control of the resistive suspect, Detective Gibson and I handcuffed Jones, advised him of his rights, and escorted him outside of the residence.

....

14. I did not use any unnecessary or excessive force in the apprehension, arrest or detention of plaintiff Jermaine Jones on February 19, 2004, but only the force reasonable and necessary to overcome Jones's forcible resistance to the arrest.

15. Detective McIntosh, Detective Gibson, and I were the only detectives involved in the physical apprehension and arrest of plaintiff Jermaine Jones that occurred in the bathroom of his residence on February 19, 2004.

16. I did not witness any detective or law enforcement officer use any unnecessary force in the detention or arrest of plaintiff Jermaine Jones on February 19, 2004.

      17.     Any injuries sustained by plaintiff Jermaine Jones during his arrest on February 19, 2004, were caused by his own resistive and combative actions.[6]

In his affidavit, McIntosh's account of the events was virtually identical to that offered by Sharp.[7]

Based on the movants' affidavits, the Court finds that there is no dispute that Sharp and McIntosh were physically involved in plaintiff's apprehension. However, a genuine issue of material fact exists with respect to what force was employed during that apprehension. Movants contend that they used only the minimum physical force necessary to overcome plaintiff's resistance and that any injuries he sustained were accidental ones resulting solely from his own actions. On the other hand, plaintiff contends that he offered no resistence and yet was beaten mercilessly even after he was handcuffed and fully restrained. In that both movants and plaintiff have offered competent[8] yet conflicting evidence regarding the central factual issue of the excessive force claims herein, summary judgment is not appropriate with respect to claims asserted against Sharp and McIntosh. Rather, a jury must decide who is telling the truth, and who is not, with respect to those claims.[9] The claims against those defendants will proceed to trial as scheduled.

---

    [6]    Rec. Doc. 72, Exhibit C.

    [7]    Rec. Doc. 72, Exhibit B.

    [8]    The Court specifically notes that plaintiff's factual allegations in his verified complaint are competent summary judgment evidence. Hart v. Hairston, 343 F.3d 762, 765 (5th Cir. 2003). In addition, plaintiff has submitted a declaration, executed under penalty of perjury, in which he reiterates the factual allegations of his complaint. Rec. Doc. 79.

    [9]    The Court also flatly rejects the contention that Sharp and McIntosh are entitled to summary judgment based on qualified immunity. The United States Fifth Circuit Court of Appeals has noted:

> Qualified immunity protects officers from suit unless their conduct violates a clearly established constitutional right. Claims of qualified immunity require a

However, the Court finds that the remaining movants are in fact entitled to summary judgment. All of the evidence shows that Taylor, Blackmon, Fonte, Powe, Liberto, Wicker, and Strain were not directly involved in plaintiff's physical apprehension. As noted, Sharp and McIntosh state that that only they and Gibson physically apprehended plaintiff.[10] Taylor was present in the house but only retrieved the evidence.[11] Blackmon, Fonte, and Powe were not even present in the house; rather, they simply secured the outer perimeter.[12] Liberto and Wicker did not even participate in the execution of the search warrant or plaintiff's apprehension.[13] There is no evidence that Strain was even present at the scene or in any way personally involved in plaintiff's apprehension. Plaintiff has offered no evidence that Taylor, Blackmon, Fonte, Powe, Liberto,

---

> two-step analysis. First we must determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. If there is no constitutional violation, our inquiry ends. However, if the allegations could make out a constitutional violation, we must ask whether the right was clearly established – that is, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.

Mace v. City of Palestine, 333 F.3d 621, 623-24 (5th Cir. 2003) (internal quotation marks and citations omitted). Clearly, plaintiff had a constitutional right under the Fourth Amendment to be free from the use of excessive force. The facts alleged by plaintiff, taken in the light most favorable to him, would support a finding that his Fourth Amendment rights were violated by Sharp and McIntosh. Moreover, the Court finds that if the incident occurred as plaintiff alleges, with him being beaten mercilessly even after he was fully restrained and offering no resistance, it would be apparent to a reasonable officer that the conduct of the apprehending officers was unlawful.

[10] Rec. Doc. 72, Exhibits B and C.

[11] Rec. Doc. 72, Exhibit D.

[12] Rec. Doc. 72, Exhibits E, F, and G.

[13] Rec. Doc. 72, Exhibits H and I.

Wicker, or Strain were involved in his physical apprehension or the alleged use of force against him; to the contrary, he candidly admits that he does not know who was actually involved. Accordingly, this Court finds that no genuine issue of material fact remains in dispute with respect to these defendants. Because plaintiff has offered no evidence whatsoever to rebut movants' summary judgment evidence showing that these defendants were not involved in plaintiff's physical apprehension and used no force of any kind against him, the Court finds that summary judgment is appropriate as to the claims against Taylor, Blackmon, Fonte, Powe, Liberto, Wicker, and Strain.[14]

---

[14] The Court notes that it is unclear why plaintiff has named Strain as defendant. Nevertheless, it is evident that he has stated no claim against Strain in either his individual or official capacity.

Regarding individual capacity claims, the United States Fifth Circuit Court of Appeals has noted: "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Plaintiff has made no factual allegations against Strain. Moreover, without personal involvement, any individual-capacity claim against Strain would necessarily fail. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Additionally, the fact that Strain holds a supervisory position is of no moment. Under 42 U.S.C. § 1983, a supervisory official is not liable for the actions of his subordinates under any theory of vicarious liability. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987); see also Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002) ("Section 1983 does not create supervisory or *respondeat superior* liability.").

Plaintiff also has failed to state an official-capacity claim against Strain. "Official capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent." Burge v. Parish of St. Tammany, 187 F.3d 452, 466 (5th Cir. 1999). Accordingly, an official-capacity claim against Strain would in reality be a claim against the local governmental body itself. However, in order to hold a local governmental body accountable for a constitutional violation, a plaintiff must show that (1) an employee of the local governmental body violated plaintiff's clearly established constitutional rights with subjective deliberate indifference, and (2) the violation resulted from a policy or custom adopted or maintained by the local governmental body with objective deliberate indifference. See Olabisiomotosho v. City of Houston, 185 F.3d 521, 528-29 (5th Cir. 1999). Plaintiff does not allege that the purported constitutional violations in this case resulted from an official policy or custom.

Additionally, the Court notes that the claims against the remaining defendants, who did not join in the motion for summary judgment, must be dismissed for the following reasons.

### Justin Gibson and Evan Graham

The Court finds that the claims against defendants Gibson and Graham should be dismissed pursuant to Fed.R.Civ.P. 4(m), which provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, *shall* dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Fed.R.Civ.P. 4(m) (emphasis added).

Plaintiff was granted pauper status in this lawsuit.[15] Therefore, he is entitled to have service effected by the United States Marshal. Fed.R.Civ.P. 4(c)(2). That fact, however, does not relieve plaintiff of all responsibility regarding service. Rather, "[a]t a minimum, a plaintiff should request service upon the appropriate defendant and attempt to remedy any apparent service defects of which a plaintiff has knowledge." Rochon v. Dawson, 828 F.2d 1107, 1110 (5th Cir. 1987). Dismissal is appropriate when service has not been properly effected due to the inaction or dilatoriness of a plaintiff proceeding *in forma pauperis*. Id.

More than nineteen months have elapsed since this lawsuit was filed. Despite the passage of that extensive period of time, plaintiff has not provided this Court or the United States Marshal with the information necessary to effect service on Gibson and Graham. The Court has given

---

[15] Rec. Doc. 2.

plaintiff notice of the fact that those defendants have not been served, as well as repeated opportunities to cure that defect.[16]  Nevertheless, plaintiff has not cured the defect by providing the necessary service information, and, as a result, the United States Marshal cannot effect service. Therefore, the failure to serve the defendants results not from the actions or inactions of the Court[17] or the United States Marshal, but rather solely from the inaction and dilatoriness of plaintiff.

Despite the fact that plaintiff was expressly put on notice that his claims against Gibson and Graham would be dismissed unless he provided correct service information or showed good cause for not doing so, plaintiff has not done so.  Accordingly, this Court finds that dismissal of those claims is now appropriate.

Lakeview Medical Center

Plaintiff filed this complaint on a form to be used by prisoners asserting claims pursuant to 42 U.S.C. § 1983.  The United States Fifth Circuit Court of Appeals has noted:

> To state a claim under section 1983, a plaintiff must allege facts tending to show (1) that he has been deprived of a right secured by the Constitution and the laws of the United States, and (2) that the deprivation was caused by a person or persons acting under color of state law.

Bass v. Parkwood Hospital, 180 F.3d 234, 241 (5th Cir. 1999) (quotation marks omitted); see also Wong v. Stripling, 881 F.2d 200, 202 (5th Cir. 1989).  In the instant case, plaintiff's claims against Lakeview Medical Center meet neither of these requirements.

---

[16]   Rec. Docs. 42, 47, 56, 66, and 71.

[17]   To the contrary, the Court has made several efforts to assist plaintiff in locating those defendants.  See Rec. Docs. 52 and 66.

11

Plaintiff claims that he was provided with inadequate medical care at Lakeview Medical Center. Specifically, he complains that he was not hospitalized overnight and that he was discharged without pain medication. Those claims implicate no federal constitutional or statutory rights; rather, they are, at best, state law claims for negligence or medical malpractice. Allegations of negligence or medical malpractice are never sufficient to state a claim for constitutionally inadequate medical care. Hall v. Thomas, 190 F.3d 693, 697 (5th Cir. 1999).

Moreover, in any event, Lakeview Medical Center is a private healthcare provider and, as such, is not a state actor. See Bass, 180 F.3d at 241-43; Wheat v. Mass, 994 F.2d 273, 275-76 (5th Cir. 1993); Canfield v. Baylor Medical Center, No. 3:05CV1828D, 2006 WL 2460554, at *4 (N.D. Tex. Aug. 23, 2006). Accordingly, that private entity cannot be held liable under 42 U.S.C. § 1983.

For the foregoing reasons, plaintiff's federal civil rights claims against Lakeview Medical Center are not cognizable under § 1983 and should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failing to state a claim on which relief may be granted.[18]

---

[18] With respect to actions filed *in forma pauperis*, such as the instant lawsuit, 28 U.S.C. § 1915(e)(2)(B) provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action or appeal –
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary damages against a defendant who is immune from such relief.

The United States Fifth Circuit Court of Appeals has noted, "A district court may dismiss an IFP proceeding for frivolousness or maliciousness at any time, before or after service of process, and ... a district court is vested with especially broad discretion in determining whether such a dismissal is warranted." Bailey v. Johnson, 846 F.2d 1019, 1021 (5th Cir. 1988) (textual alteration and internal

Accordingly,

**IT IS ORDERED** that the motion for summary judgment is **DENIED IN PART AND GRANTED IN PART**. The motion is denied with respect to the claims against James McIntosh and Doug Sharp, and those claims will proceed to trial as scheduled. However, the motion is granted with respect to the claims against Sheriff Rodney J. Strain, Jr., Darren Blackmon, Wayne Wicker, Mark Liberto, Nick Powe, Danny Fonte, and James Taylor, and the claims against those defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the claims against Justin Gibson and Evan Graham are **DISMISSED WITHOUT PREJUDICE** pursuant to Fed.R.Civ.P. 4(m) for failure to effect service on those defendants.

**IT IS FURTHER ORDERED** the federal civil rights claims against Lakeview Medical Center are **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failing to state a claim on which relief may be granted.

New Orleans, Louisiana, this eleventh day of September, 2006.

                                                  **SALLY SHUSHAN**
                                                  **UNITED STATES MAGISTRATE JUDGE**

---

quotation marks omitted).